EIDLITZ & SON (INC.), AS AGENT *v.* UNITED STATES (No. 2254).[1]

1. CONSTRUCTION PARAGRAPH 573, TARIFF ACT OF 1913.

Paragraph 573, tariff act of 1913, accords free entry to "Philosophical and scientific apparatus," etc. imported "for the use and by order of" certain described societies or institutions. The paragraph means that the importation must be made *both* for the use of and by order of the society or institution. Both the history of the paragraph and the results which would follow negative the idea that the intention of Congress would be effectuated by construing "and" to mean "or."

2. EVIDENCE, ADMISSIBILITY.

An affidavit filed with the collector in compliance with Treasury regulations prescribing the method of claiming free entry under paragraph 473, tariff act of 1913, is not admissible in evidence before the Board of United States General Appraisers in the trial of a protest against the collector's disallowance of such claim.—Borgfeldt & Co. *v.* United States (11 Ct. Cust. Appls. 421; T. D. 39433).

---

[1] T. D. 39998.

3. AGENCY, PROOF OF.

The naming of appellant as agent for Yale University in a contract between himself and a third party amounts to no more than a declaration of agency made by the alleged agent in the absence of the alleged principal, and does not establish the existence of the agency. The law is well settled that proof of agency is prerequisite to making the declaration of an agent competent evidence against the principal. And where such contract is offered in evidence to establish the agency as against a fourth party, a total stranger to the whole transaction, no weight can be given to it even though admitted without objection.

4. EVIDENCE, RELEVANCY.

A showing that certain imported bells were to be inscribed "For God, For Country and For Yale" tends to prove that they were for the *use* of Yale University but not that they were *ordered* by it, either directly or indirectly.

5. EVIDENCE—PRESUMPTION FAVORS COLLECTOR—CHIMES FOR YALE UNIVERSITY.

Chimes, composed of bells and the necessary mechanism to play certain musical pieces by means of a keyboard, were imported to be installed as part of a building erected as a gift to Yale University. Without deciding that they are or are not the philosophical and scientific apparatus or instruments given free entry by paragraph 573, tariff act of 1913, when imported for the use of and by order of certain kinds of institutions, the failure to show that they were imported by order of the university makes it necessary to affirm the decision of the Board of United States General Appraisers overruling a protest claiming such free entry as against the collector's assessment as musical instruments under paragraph 373.

## United States Court of Customs Appeals, January 24, 1924.

APPEAL from Board of United States General Appraisers, G. A. 8603 (T. D. 39448).

[Affirmed.]

*Cornelius J. Sullivan* for appellant.

*William W. Hoppin*, Assistant Attorney General (*Charles D. Lawrence* and *Edward J. Neary*, special attorneys, of counsel), for the United States.

[Oral argument October 2, 1923, by Mr. Sullivan and Mr. Lawrence.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges.

HATFIELD, Judge, delivered the opinion of the court:

The importation the subject of this appeal consisted of chimes composed of ten bells and the necessary operating mechanism. The bells were arranged so that the chimes could be played by hand by means of a keyboard. They did not strike the hour, but were designed for the purpose of playing certain old music. They were installed in the tower of a building known as Harkness Memorial Quadrangle at Yale University. The chimes and the building in which they were installed were a gift to the university by the Harkness family.

The chimes were imported in April, 1922, and were assessed for duty by the collector as musical instruments, under paragraph 373 of the tariff act of 1913.

It is the claim of the importer that the importation was entitled to free entry under the provisions of paragraph 573 of the tariff act of 1913, which reads as follows:

Philosophical and scientific apparatus, utensils, instruments, and preparations, including bottles and boxes containing the same, specially imported in good faith for the use and by order of any society or institution incorporated or established solely for religious, philosophical, educational, scientific, or literary purposes, or for the encouragement of the fine arts, or for the use and by order of any college, academy, school, or seminary of learning in the United States, or any State or public library, and not for sale, and articles solely for experimental purposes, when imported by any society or institution of the character herein described, subject to such regulations as the Secretary of the Treasury shall prescribe.

It is conceded that Yale University is such an institution as is mentioned in paragraph 573.

The burden of proof rested upon the importer at the trial before the Board of General Appraisers to prove by proper evidence its claim that the importation was entitled to free entry under paragraph 573 of the tariff act of 1913.

The Board of General Appraisers overruled the protest, and the importer appealed.

It is contended by the importer that the chimes in question were imported *by order of* and for the use of Yale University, and that this claim is substantiated by the introduction in evidence of the contract between the importer and John Taylor & Co. (Exhibit 1), together with the testimony of the associate treasurer, comptroller, and acting secretary of Yale University to the effect that he filed the affidavit of free entry on behalf of the university and a specification attached to Exhibit 1 providing for an inscription on the bells, "For God, For Country, and For Yale."

It is argued that this evidence proves that the importer, Marc Eidlitz & Son (Inc.), was acting as agent for Yale University in the transaction, and that therefore the order given by Marc Eidlitz & Son (Inc.) was in fact the order of Yale University. So far as the evidence of the inscription is concerned, it seems to us that it tended to prove only that the chimes were for the use of Yale University, and we think it did not tend to prove that the chimes were ordered by the university, either directly or through an agent.

The affidavit of free entry above referred to and mentioned by counsel for the importer in his brief as having been filed by the associate treasurer of Yale University, on behalf of the university, was but a preliminary affidavit required by the customs regulations to aid the collector in determining whether the importation was entitled

to free entry, and although a part of the record is not competent evidence of the statements contained in the affidavit upon the trial before the Board of General Appraisers to substantiate the claims made by the importer in his protests.—Borgfeldt & Co. *v.* United States (11 Ct. Cust. Appls. 421; T. D. 39433), and cases therein cited.

However, in case of express stipulation by the parties to submit a case to the Board of General Appraisers "on the record," the statements contained in a preliminary affidavit filed with the collector and forwarded by him to the Board of General Appraisers as a part of the record may be taken into account by the board in its consideration of the case.—United States *v.* Borgfeldt & Co. (11 Ct. Cust. Appls. 129; T. D. 38934).

There was, however, no such stipulation in this case. On the contrary, counsel for the Government objected to the consideration of the affidavit under discussion as evidence in the case, and while the record shows that the board overrruled the objection, the effect of the same is to negative the suggestion of any stipulation to submit "on the record."

The statement of the witness Farnam to the effect that he filed on behalf of Yale University the declaration of free entry on the date of April 28, 1922, tends to prove that the officers of the university were interested in the chimes, but does not, we think, prove the agency asserted by the importer.

We come now to the question of how much weight and importance is to be attached to the declaration of agency set forth in the contract between the importer and John Taylor & Co., appearing in the record as Exhibit 1. On the front page of said exhibit and under paragraph 1 appears the following language:

> The Sub-Contractor shall and will well and sufficiently perform and finish in a thoroughly workman-like manner under the direction and to the satisfaction of the General Contractors and Jas. Gamble Rogers, Architect, (acting as agent of the owner, Yale University * * *

It is argued by the importer that this is sufficient to establish the agency claimed by it. It will be noted that Jas. Gamble Rogers is included in the declaration, as if it was intended thereby to assert that the general contractors and Rogers were the joint agents of Yale University, although Rogers is not a party to the contract and does not presume to act as the joint agent with the general contractors. It might well be argued that a proper construction of the declaration would lead to the conclusion that Rogers alone was the agent for the purposes mentioned therein. We are unable to reach the conclusion desired by the importer. We think that the language above quoted amounts to no more than an admission or declaration of agency by the alleged agent, made in the absence of the alleged principal, and the fact that the declaration is contained in the written

contract of purchase or order does not give the statement any more weight than if it had been made orally.   It remains but a declaration or an admission of agency.

The law is well established that proof of agency is essential in order to make the declarations of an alleged agent competent evidence as against the principal.—Union Guaranty & Trust Co. v. Robinson (79 Fed. 420); Chicago, R. I. & P. Railway Co. v. Chickasha National Bank (174 Fed. 923) and cases therein cited; First Unitarian Society v. Faulkner et al. (91 U. S. 415–417).  ,

In this case, however, the declaration is offered in evidence to establish the agency, not as against the principal, for the principal is not even a party to this case, but is offered against a party who was a total stranger to the transaction; and when such a declaration or admission, which is no more than a self-serving declaration, is admitted in evidence, as in this case, against a total stranger to the transaction involving the contract of agency as well as a stranger to the contract for the purchase of the chimes, and is unsupported by independent proof of the agency, · no weight can be given to the declaration, even though admitted without objection.

There is no other evidence in the case in any way tending to prove the alleged agency, although at least one officer and a professor of the university appeared at the trial before the Board of General Appraisers and gave testimony upon other phases of the case.

It was incumbent upon the importer to prove at the trial, by competent evidence, that it was the agent of Yale University in the transaction under discussion and that it acted as such agent in conformity with the authority conferred upon it by the university. This, we think, the importer wholly failed to do.

But it is argued by the importer that a proper interpretation of paragraph 573 of the tariff act of 1913 requires the substitution of the word "or" in the language "for the use and by order of" in the place of "and," and that accordingly it is unnecessary to prove that the chimes were ordered by Yale University, either directly or through an agent.

There is authority for the suggestion that the conjunctions "and" and "or" are convertible, or may be substituted one for the other, and such substitution is not infrequently resorted to when, in the interpretation of a statute, the evident intention of Congress requires it.—United States v. Gavin & Co. (7 Ct. Cust. Appls. 292: T. D. 36804).

But the conjunction "or" can not be substituted for the conjunction "and" where to do so would defeat the evident intention of Congress and lead to an absurd result.

To substitute the word "or" for "and" in paragraph 573 of the tariff act of 1913 would, we think, utterly destroy the plain meaning

of the paragraph and extend authority to a university or college to import philosophical and scientific instruments without reference to whether or not it was to make use of said instruments. This would certainly serve no good purpose from the standpoint of "lending encouragement to institutions of learning" within the accepted meaning of that language, and would defeat rather than enforce the clear intention of Congress as expressed in the paragraph, and would, we think, place this court in the position of assuming legislative functions.

The history of the legislation resulting in the language employed in paragraph 573 of the tariff act of 1913 is of considerable interest, and seems to indicate that Congress was giving considerable attention to the choice of the language necessary to express the legislative purpose.

In paragraph 650 of the act of 1909 the same language is used as in the act of 1913, in paragraph 573.

In the act of 1897 in paragraph 638 we find that the word "and" is used in reference to articles imported by any society or institution incorporated for religious, philosophical, educational, scientific, or literary purposes, and that the word "or" is used in the language "* * * for the use or order of any college * * *."

From the tariff act of 1790 to the act of 1913 Congress in its various enactments on this subject has used discrimination and care in its employment of the two words under discussion, as the apparent exigencies of the times required.

We think the legislative history of paragraph 573, and similar paragraphs, clearly indicated on the part of Congress the deliberate intention to employ the conjunction "and" in paragraph 573 of the tariff act of 1913; and that in order to entitle the importation to free entry it must be made to appear that it is imported both for the use of and by order of one of the institutions named in the paragraph.

Having determined from the record in this case that the chimes in question were not imported by order of Yale University, it follows that the importation was not entitled to free entry under the provisions of paragraph 573 of the tariff act of 1913.

We think it is unnecessary to determine, and we do not decide the question as to whether the chimes are such philosophical or scientific instruments as come within the meaning of the terms "philosophical and scientific apparatus, utensils, instruments," * * * of paragraph 573, as to do so could in no way affect the final decision of this court.

The judgment of the Board of General Appraisers is *affirmed.*