FREDERICK RICHARDS *v.* UNITED STATES (No. 4010)[1]

United States Court of Customs and Patent Appeals, November 9, 1936

*Joseph R. Jackson*, Assistant Attorney General (*Ralph Folks* and *Webster J. Oliver*, special attorneys, of counsel), for the United States.
*James W. Bevans* for appellant.

[Oral argument October 7, 1936, by Mr. Bevans and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, First Division, one judge dissenting, dismissing the petition of appellant for the remission of additional duties assessed, under the provisions of section 489, Tariff Act of 1930, upon certain hydrosulphite of soda, imported from England and entered at the port of Charleston, South Carolina.

In view of the action of the trial court and the assignments of error by appellant, the case is not before us on its merits, and we need

[1] T. D. 48670.

consider nothing except whether the trial court erred in sustaining the motion to dismiss the petition.

The petition filed by appellant has a caption reading:

In the Matter of Frederick Richards a/c Chas. H. Stone.　*　*　*

The motion to dismiss was made by counsel for the Government at the beginning of the trial on the ground that the petition "was not made by the real party in interest," and action upon it was reserved with the statement by the acting presiding judge, "It will be passed on when the case is taken up on the merits." In the final decision, however, the merits were not passed upon. The motion to dismiss the petition was allowed, and in allowing it the majority opinion stated:

In this case the petition is not filed in the name of the real party in interest but in the name of Frederick Richards, and if the petition were granted the refund would be paid to Richards and not to Stone, who appears to be the actual importer and therefore the real party in interest.

The record is a very unsatisfactory one and it is difficult to ascertain all the facts, but it is fairly established that there is a partnership by name of Frederick Richards, of which Frederick Richards, Jr., is a member, whose business is "Custom house broker, ship agent, warehousing and forwarding"; that the actual purchaser of the merchandise involved was Chas. H. Stone, of Charlotte, North Carolina; that on April 22, 1935, Chas. H. Stone executed upon a printed and usual form a "Declaration of Purchaser," which bears the notarial signature and seal of C. O. Padgett, Notary Public, Mecklenburg County, N. C.; that on April 24, 1935, there was issued a "Carrier's Certificate" by an agent of South Atlantic Mail Line (presumably the carrier which transported the merchandise) certifying Charles H. Stone to be the owner or consignee, and, "in accordance with Section 484 (j) of the Tariff Act of 1930," authorizing the release of the merchandise to him; that on that same date, April 24, 1935, there was filed a consumption entry which stated "Merchandise imported by Frederick Richards, nominal consignee, Charleston, S. C.," and signed "Chas H Stone [in typewriting], Per Frederick Richards [signed with pen] nominal consignee, Address Charlotte, N. C."; that this consumption entry was prepared and filed by Frederick Richards, Jr., and that on that date he paid $393.75 as duty based upon the original entry and later also paid $112.00 as the amount of the increased duty assessed.

The foregoing facts we have gleaned from a somewhat painstaking examination of the record made up at the trial (in which the testimony of Frederick Richards, Jr., was the only testimony offered) and of the papers included in the file transmitted to this court from the trial court which contains the "Consular Certificate"; the "Summary of

Entered Value [etc.]"; a "Report of Appraising Officer"; "Declaration of Purchaser"; "Consumption Entry" and "Carrier's Certificate."

Among the papers in such file also is found one entitled "Notice to Importer of Advance in Value upon Appraisement." This is a printed form, such, we assume, as is usual in such cases, but the paper in the file is merely a copy, the typewritten portions having evidently been reproduced by the use of carbon paper. It is not signed, but is addressed to "Chas H. Stone, Charlotte N. C.", under date of July 13, 1935, and recites, among other things, that the merchandise had been advanced in value by 28 per centum. Upon the consumption entry we find stamped two notations of payments evidently made to the collector's office, one of these being dated April 24, 1935, the amount of the payment on that date being $393.75, and the other dated August 30, 1935, with $112.00 written with pen alongside the stamp mark. These amounts are the amounts which Frederick Richards, Jr., testified, without contradiction, that he paid.

The $112.00 so paid as the amount of the increased duty assessed, however, is not the "additional duties" remission of which is sought in the petition. The brief on behalf of petitioner says:

This [$112.00] was the increased duty based on the regular duty at the higher value returned by the Appraiser. The additional duty under Section 489 (which is 1% on the entire value of the shipment for each 1% of difference between the entered and the appraised values) has not been paid. This additional duty would be 28% or approximately $404.60. The petition is directed toward a remission of this amount.

The brief further states that the additional duties have not been paid by either Stone or Richards, but there is no contention on the part of the Government that this affects the issue. The sole question is whether Richards is such a party in interest as that he has the right to maintain the action brought.

Richards testified that the merchandise was "Consigned to Frederick Richards, the consignee", and that the entry was made "In the name of Frederick Richards." What the entry sheet actually shows in this respect has been recited, *supra*. It is not deemed to be inconsistent with the testimony of Richards, upon the theory that Richards, as a customs broker, was acting for Stone, concerning which no question seems ever to have been raised.

Section 483 of the Tariff Act of 1930 bears the title of "Consignee as Owner of Merchandise", and the pertinent portions of the text read:

For the purposes of this title—

(1) All merchandise imported into the United States shall be held to be the property of the person to whom the same is consigned; and the holder of a bill of lading duly indorsed by the consignee therein named, or, if consigned to order, by the consignor, shall be deemed the consignee thereof. * * *

(2) A person making entry of merchandise under the provisions of subdivision (h) or (i) of section 484 (relating to entry on carrier's certificate and on duplicate bill of lading, respectively) shall be deemed the sole consignee thereof.

In the instant case no bill of lading or duplicate bill of lading appears among the papers and there is no explanation in the record as to the absence of such. We are, therefore, left wholly in the dark as to whether either a bill of lading or a duplicate bill of lading was ever produced. It is our assumption that if either was produced its proper place was in the file of the collector and that, in view of the nature of the issue here, it would have been forwarded by him to the trial court along with the other official papers which were forwarded. The fact that it was not so forwarded would indicate that none was, in fact, produced at the time of entry, since the collector must be assumed to have performed his official duty in the premises.

The statute, however, makes provision for entry without the production of a bill of lading or duplicate thereof, in at least three ways, viz., first, according to section 484 (c) (1) where it is provided that if the collector is satisfied that no bill of lading has been issued, "the shipping receipt or other evidence satisfactory to the collector may be accepted in lieu thereof"; second, according to section 484 (c) (2) where it is provided that entry may be made if a bond be executed, according to the terms there prescribed, by *"the person making such entry"* [Italics ours], and, third, according to section 484 (h) where entry is provided on the carrier's certificate, by the person therein certified to be the owner or consignee, *"either in person, or by an authorized agent * * *."* [Italics ours.]

Obviously it must be assumed in this case, nothing appearing to the contrary, that the law governing the entry of the merchandise was properly complied with and that the entry was legally made under some one of the methods prescribed by the statute. Also, we think it must be assumed, in the absence of any showing to the contrary, that Richards acted with full authority in making the entry, so far as that part of the proceeding is concerned, and the question to be determined here is, whether, under this state of facts and law, Richards was such a party in interest, or should be assumed to have occupied such a relation to the owner, Stone, as that he had the right to maintain, in the manner in which he presented it, the action for remission of the additional duties.

Section 489 of the Tariff Act of 1930 reads in part:

Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided, except in the case of a clerical error, upon the order of the Secretary of the Treasury, or in any case upon the finding of the United States Customs Court, upon a petition filed at any time after final appraisement and before the expiration of sixty days after liquidation and supported by satisfactory evidence under such rules as the court may prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise.

It will be observed that the section is not specific as to who may file the petition for remission. That it should not be permitted to be filed by a stranger to the transaction may be said to be self-evident as a matter of law. In the case of *Hensel, Bruckman & Lorbacher (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 498, 502–3, T. D. 41377, this court, speaking of section 489 of the Tariff Act of 1922, which, so far as here pertinent, was the prototype of section 489 of the Tariff Act of 1930, said:

At no place in the section is it either directly or indirectly suggested that the importer is the only proper person to file the petition. Of course, whoever files it should show his interest. It is clear, in this case, that the brokerage firm was there and is here acting for its client, and if the duties are remitted the benefit will accrue to the party in interest, * * *.

As pointed out earlier herein, the majority of the trial court was of opinion that if the refund was granted it would be paid to Richards and not to Stone.

Since the amount has not, in fact, been paid, the granting of the petition will not result in a "refund" but in a "remission", and we are unable to see why, upon the record in the case, Richards is not entitled to maintain the action.

It is true that the text of the Richards petition does not contain so specific a recital of the relationship between himself and Stone as did the petition in the *Hensel, Bruckman & Lorbacher (Inc.)* case, *supra*, and Richards' testimony upon that matter, especially in view of the fact that at the very inception of the trial he and his counsel were placed upon notice by the Government's motion to dismiss upon the ground stated, is somewhat deficient, but the fact remains that the caption of the petition does show the claim to be made by Richards a/c Chas. H. Stone.

In view of the record in the case showing, among other things, the acceptance by the Government authorities of Richards' agency, or whatever his actual relationship with Stone was, throughout the entire proceedings up to and including the acceptance from him of the increased duties assessed, we are of opinion that he was entitled to prosecute the action which he began, and we so hold. We do not regard this case as being on all fours with the case of *Eidlitz & Son (Inc.), as Agent* v. *United States*, 12 Ct. Cust. Appls. 56, T. D. 39998, or with that of *United States* v. *F. L. Kraemer & Co.*, 17 C. C. P. A. (Customs) 448, T. D. 43879, both of which are cited by the Government.

As has been stated, the trial court did not pass upon the merits of appellant's contentions and it is proper that it do so without any expression of opinion thereon by us.

Accordingly, the judgment dismissing the petition is *reversed*, and the case is *remanded* for determination upon its merits.

LENROOT, Judge, dissents.