(C. D. 1257)

UNANUE & SONS, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided July 5, 1950)

*Barnes, Richardson & Colburn* (*James F. Donnelly* of counsel) for the plaintiff.
*David N. Edelstein,* Assistant Attorney General (*Dorothy C. Bennett,* special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

EKWALL, Judge: A quantity of guava paste imported from Cuba was entered at the port of New York. Plaintiff claims that 15 cartons (consisting of 7 cartons guava paste out of cases No. 1–120, 6 cartons of guava paste, with jelly center, out of cases No. 121–220, and 2 cartons guava shells in sirup out of cases No. 221–445) did not constitute an importation and therefore are not subject to duty under the Tariff Act of 1930. Alternative claims are made in the pleadings, viz, that the merchandise is prohibited and therefore not subject to duty by reason of the provisions of section 558 (a) (2) of

said act, as amended by the Customs Administrative Act of 1938, and that allowance in duty should be made under section 506 of the same act.

The testimony of an employee of the importer showed that at the time this shipment arrived it consisted of more than one truckload; that about half of the shipment was picked up by the first truck, and about a week or 10 days thereafter the truck was again sent to the pier, at which time it was discovered that the 15 packages in suit were not there. This witness stated that about a week or 2 thereafter he went to the pier and was informed that some of the packages in this shipment were in bad condition and had been thrown away. He further testified that his firm had never received any of these 15 cartons and that he had been informed that they were destroyed on the pier.

The collector in his letter of transmittal in evidence states that the discharging inspector reported certain cartons of this shipment were landed in bad order, were abandoned by the importer, and were destroyed by the steamship company by the use of chloride, but that no allowance in duties was made by reason of the fact that the goods had not been officially abandoned in that there was a failure of compliance with section 15.3, Customs Regulations of 1943, governing abandonment under section 506, *supra*, and destruction had not been accomplished under customs supervision. The testimony of the customs inspector corroborated the above and notations on the official entry papers in evidence are to the same effect. From the inspector's testimony it also appeared that he had been informed orally by a representative of the Pure Food & Drug Administration that said representative intended to order these goods destroyed as unfit for human consumption, but he, the inspector, did not receive any official document indicating that the importer had abandoned the merchandise.

Plaintiff in the brief filed relied on the claim for allowance in duties on the 15 cartons as a nonimportation, no mention being made of the alternative claims under section 506, *supra*, and section 558 (a) (2), *supra*. Inasmuch as we find no merit in those alternative claims, they are overruled. As to the claim for allowance on the ground of nonimportation, plaintiff cites the case of *Lawder* v. *Stone*, 187 U. S. 281. The rule announced in that case rests upon the theory that merchandise which has no commercial value at the time of importation cannot be considered as merchandise for tariff purposes and therefore is not subject to duty.

We must therefore determine whether this merchandise had any commercial value at the time of its arrival in the United States. The only satisfactory evidence before us relating to the condition of these 15 cartons at the time of importation consists of the report of the

discharging inspector that they were "landed in bad order." In the *Lawder* v. *Stone* case, *supra*, the Court had before it a shipment of pineapples which the evidence showed to have been so far decayed as to be utterly worthless upon its arrival. The Court, in holding that the shipment should be treated as a nonimportation for customs purposes under the proof there presented, used the following language:

> * * * If, as is conceded by the government, the rotten and worthless pineapples in question had been thrown overboard before the vessel reached this country, and no duty could have been assessed upon the fruit thus disposed of, the circumstance that the mass of rotten fruit in question could not perhaps have been gotten at upon the voyage by reason of the extent and character of the cargo of which it formed a part, so as to permit of the worthless stuff being dumped overboard before the arrival of the vessel in the United States, ought not, in justice, to debar the importer from successfully contending that the worthless material when it reached this country was not goods, wares or merchandise within the intent of the tariff acts.

The Supreme Court, there, differentiated between merchandise which the evidence showed had been merely damaged at the time of importation and that which at the time of its arrival had no commercial value. The Court pointed out that as to damaged merchandise the importer, in order to obtain refund of duties, was required to comply with the tariff provisions in regard to segregation and abandonment with the utmost haste, in order to arrest the spread of decay.

The only evidence in the instant case as to the condition of the 15 cartons here involved at the time of their arrival in the country is the report of the discharging inspector that they were "landed in bad order." There is no report that they were worthless. Customs tribunals have applied the rule enunciated in the case of *Lawder* v. *Stone*, *supra*, solely in cases where it has been conclusively established that the goods were utterly worthless at the time of arrival. *United States* v. *Shallus*, 2 Ct. Cust. Appls. 332, T. D. 32074; *United States* v. *Pastene*, 3 Ct. Cust. Appls. 164, T. D. 32458.

In order to obtain relief under the rule in the *Lawder* v. *Stone* case, *supra*, an importer must sustain the burden of establishing by competent evidence that his goods were not merely damaged at the time of their arrival, but were utterly worthless. *United States* v. *Shallus*, *supra*; *Steele* v. *United States*, Abstract 10931; and *Wagner Bros.* v. *United States*, 3 Cust. Ct. 102, C. D. 212.

The importer in the instant case had no knowledge of the condition of the 15 cartons at the time of their arrival; therefore, it produced no evidence on that point. This importation being perishable merchandise, it seems that the importer should have exercised diligence. Had the importer done so, it would have had little, if any, difficulty in obtaining the desired information. From the testimony of plain-

tiff's witness it is shown that the truckman removed only half of the shipment from the wharf at the time of importation and that a week or 10 days passed before the truck was again sent to the pier to take delivery of the remainder of the goods. It is to be expected that in the case of perishable commodities any damage present at the time of arrival would spread rapidly in cartons remaining on the wharf for a week or 10 days. Moreover, the second truckman informed this witness that 15 cartons were not to be found on the wharf a week or 10 days after importation, and the witness admitted that he did not go to the pier to investigate until a week or 10 days thereafter when he obtained hearsay information that some of the packages of the shipment has been in "bad condition" and that "they threw them away." The witness admitted that he had no personal knowledge as to the 15 cartons here involved.

If the 15 cartons were damaged when imported, the remedy was by formal abandonment within 30 days, as provided for in section 506 (1) of the tariff act. If they were condemned and destroyed by health authorities, resort should have been had to section 506 (2). Said section 506 is in the following language:

SEC. 506. ALLOWANCE FOR ABANDONMENT AND DAMAGE.

Allowance shall be made in the estimation and liquidation of duties under regulations prescribed by the Secretary of the Treasury in the following cases:

(1) ABANDONMENT WITHIN THIRTY DAYS.—Where the importer abandons to the United States, within thirty days after entry in the case of merchandise not sent to the appraiser's stores for examination, or within thirty days after the release of the examination packages or quantities of merchandise in the case of merchandise sent to the appraiser's stores for examination, any imported merchandise representing 5 per centum or more of the total value of all the merchandise of the same class or kind entered in the invoice in which the item appears, and delivers, within the applicable thirty-day period, the portion so abandoned to such place as the collector directs unless the collector is satisfied that the merchandise is so far destroyed as to be nondeliverable;

(2) PERISHABLE MERCHANDISE, CONDEMNED.—Where fruit or other perishable merchandise has been condemned at the port of entry, within ten days after landing, by the health officers or other legally constituted authorities, and the consignee, within five days after such condemnation, files with the collector written notice thereof, an invoice description and the location therof, and the name of the vessel or vehicle in which imported.

The testimony of plaintiff's witness discloses that 24 days subsequent to importation he learned that these 15 cartons had been in bad order and had been destroyed by duly constituted authorities. Under the terms of section 506, supra, the importer had 6 days within which to file a formal notice of abandonment under said section 506 (1) and obtain refund of duties. It did not do so nor did it otherwise comply with the mandatory regulations (section 15.3, Customs Regulations of 1943) promulgated under said section 506. In view of the fact

that the record shows that the importer had been informed orally that these 15 cartons had been condemned and destroyed by the health authorities, plaintiff's remedy was by complying strictly with the provisions of section 506 (2), *supra*, and the mandatory regulations promulgated thereunder. Said section provides that condemnation must be accomplished within 10 days after landing, and within 5 days after condemnation, the consignee shall file written notice thereof with the collector. Here, again, the importer was too late. By the time he investigated, 24 days after importation, the 5-day period had expired.

Since the evidence fails to establish that the 15 cartons at the time of arrival were utterly worthless, but establishes only that they were in "bad order," plaintiff cannot obtain relief under the rule enunciated in *Lawder* v. *Stone, supra*.

We find on this record that plaintiff's claims should be and the same hereby are overruled. Judgment will be rendered for the defendant.